NICHOLS v. CHESAPEAKE & O. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1912.)

No. 2,183.

1. REMOVAL OF CAUSES (§ 108*)—JURISDICTION—DISCONTINUANCE.

Where a federal court acquired no jurisdiction of a cause by the filing of the record therein after a petition for removal had been denied by the state court, because of the insufficiency of the petition to warrant a removal, the filing of a discontinuance by the plaintiff in the federal court, after a motion to remand had been overruled, was ineffective to dismiss the action which remained pending in the state court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 217; Dec. Dig. § 108.*]

2. REMOVAL OF CAUSES (§ 50*)—SEPARABLE CONTROVERSY—PETITION ALLEGING DIFFERENT CAUSES OF ACTION.

Where the petition in a state court in an action against a railroad company and another for a personal injury set up two causes of action, one against both defendants for joint negligence and the other against the railroad company alone for failure to comply with a statute, there was a separable controversy presented which rendered the cause removable by the railroad company, which was a citizen of a different state from plaintiff or its codefendant.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 100; Dec. Dig. § 50.*

Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155: Pollitz v. Wabash R. Co., 100 C. C. A. 4.]

3. LIMITATION OF ACTIONS (§ 34*)—WHAT LAW GOVERNS—ACTION BASED ON SAFETY APPLIANCE ACT—LIABILITY CREATED BY STATUTE.

An action against a railroad company to recover for personal injuries alleged to have been caused by the violation by defendant of Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), is one "upon a liability created by statute" within the meaning of Ky. St. § 2515, limiting the time for bringing such actions to five years, and, in absence of any federal statute of limitations, is governed by that section where the action is in that state.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 151–157; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 5, pp. 4116–4125.]

4. MASTER AND SERVANT (§§ 286, 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Plaintiff was a brakeman on defendant's railroad, and was injured while uncoupling a car from a train which was being pushed slowly. The

---

" car was equipped with an automatic coupler which could be operated from the side, but plaintiff testified that it would not work; that he continued to pull the lever while the car was moving 100 feet, and then, following his instructions in such cases, climbed up between the cars, and, standing on the sill of the last car which was to remain in the train, and retaining hold of the handhold with one hand, pulled the pin, and had straightened up, when a sudden jerk threw him to the ground. *Held* that although there was some testimony tending to show that the coupler was afterwards found to be in working order, in view of the strict requirements of Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), the question of defendant's violation of the act and of plaintiff's contributory negligence were both for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050, 1089–1132; Dec. Dig. §§ 286, 289.*]

In Error to the Circuit Court of the United States for the Eastern District of Kentucky.

Action at law by Willard Nichols against the Chesapeake & Ohio Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

Nichols was a brakeman in the employ of the Railway Company. In March, 1904, while switching, he was injured. He brought an action in the state court against the Railway Company. It was removed to the federal court, and then, by plaintiff, voluntarily dismissed. He then, within one year from his injury, brought an action in the state court against the Railway Company and one Cook. This action was based on the negligence of Cook, as engineer of the train, and the company's negligence through Cook. Plaintiff and Cook were citizens of Kentucky. The Railway Company was a citizen of Virginia. The Railway Company filed its petition for removal, claiming a separable controversy. The state court passed upon and denied the petition. The transcript was filed in the federal court, where a motion to remand was made, and denied. Thereupon plaintiff entered, in the federal court, an order discontinuing the action. These proceedings will be spoken of as the first removal.

. Shortly afterwards, and in July, 1905, plaintiff filed, apparently in this same action, in the state court, an amended petition, setting out also violation by the Railway Company of the Safety Appliance Act (Act March 2, 1893, 27 Stat. 531), and that his injury resulted from such violation. This amendment was apparently by way of addition to the petition on file, and not by way of substitution. Defendant again filed a petition for removal on the ground of separable controversy, and the state court passed upon and granted the application, and transcript was again filed in the federal court. Plaintiff prosecuted error to the Court of Appeals of Kentucky from the order of the state court granting the removal, but the order was affirmed. Nicholas v. C. & O. Ry., 127 Ky. 310, 105 S. W. 481, 17. L. R. A. (N. S.) 861. Plaintiff also moved in the federal court to remand, but the motion was denied. These will be spoken of as the second removal proceedings.

Defendant demurred to the amended petition of July, 1905. This demurrer was sustained. Plaintiff in December, 1907, filed an "amended and substitute" petition which counted only upon the absence of the devices required by the Safety Appliance Act.

Eventually an issue of fact was joined and came on for trial in the federal court. That court directed a verdict for defendant, and from the judgment entered upon such verdict Nichols now brings error to this court. Nichols challenges this judgment, because of lack of jurisdiction in the court and because the direction was wrongly given. The Railway Company affirms the jurisdiction, and upholds the directed verdict on three grounds: (1) That there was no proof of negligence; (2) that contributory negligence was clear; (3) that the statute of limitations had run.

Allan D. Cole and J. M. Collins (W. T. Cole, of counsel), for plaintiff in error.

E. L. Worthington (Worthington, Cochran & Browning, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] We meet, first, the question of the jurisdiction of the trial court, as fixed by one or the other of the removal proceedings. In the first removal the petition did not, in terms, allege that the joinder of Cook was fraudulently made in order to prevent removal, nor did it allege any facts requiring that conclusion. It was based on the theory that the declaration showed no joint liability against the Railway Company and Cook, and the conclusion that Cook was improperly joined thus depended upon the laws of Kentucky upon that subject. Such a joint liability, under the Kentucky law, does exist; and this court has held that an essentially similar petition was insufficient to give jurisdiction on removal. Enos v. Kentucky Co. (C. C. A. 6) 189 Fed. 342, 346. The same conclusion must be had here; and it follows that the transactions in the federal court during the first removal may be disregarded, and that the purported discontinuance of the action, filed in that court, was wholly ineffective. It is true that the judgment of the federal court denying the motion to remand was binding on plaintiff until set aside on direct attack, and plaintiff, in dismissing the action, did so at his peril. If it had been finally decided that the action was pending in the federal court at the time of the dismissal, or if defendant had relied upon the dismissal in such a way as to raise an estoppel, a different question would exist.

[2] By the amended petition of July, 1905, it appeared that a controversy existed whether the Railway Company was liable to Nichols by reason of the existence and effect of the Safety Appliance Act. This was a controversy with which Cook was not concerned. It was not alleged that he was liable, or that the Railway Company, through him, was liable, upon this subject-matter. At the same time the petition alleged a joint liability against the Company and Cook, resulting from Cook's common-law negligence as engineer in the management of the train. It has been distinctly held by the Supreme Court (Union Pac. Ry. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983) that the liability under a statute for failing to observe its provisions and the liability under the common-law rules of negligence may give rise to causes of action so separate that one may be barred by statute where the other would not be. It seems necessarily to follow that, where there are separate or distinct causes of action, there must be separable controversies. Each cause of action must present a controversy. Different rights of action may, it is true, often be joined in one suit, but this does not make them inseparable. The existence of the "separable controversy" right of removal presupposes that it may be found joined in one action with another controversy. In the present case, even if the cause of action is not "sep-

arate," yet the "separable" character of the claim under the statute is made clear by the fact that one of the defendants has no concern with this question. We are satisfied that the second removal petition conferred jurisdiction on the federal court (Jackson v. C., R. I. & P. Ry. Co., 178 Fed. 432, 102 C. C. A. 159), and that the action which had been commenced in March and was then pending in the state court upon the amended July petition was, for the first time, effectively removed.

[3] The question whether the action was commenced in time is to be governed by the statutes of Kentucky. Even if the cause of action should be treated as one created by the federal statute, still, in the absence of any general federal statutes of limitation, and in the absence of any specific limitation in the statute creating such cause of action, the rule of limitation is to be found in the statutes of the state. Campbell v. Haverhill, 155 U. S. 610, 613, 15 Sup. Ct. 217, 39 L. Ed. 280.

Section 2515, Kentucky Statutes, directs that various actions, and among others those "upon a liability created by statute" shall be commenced within five years; while section 2516 prescribes that certain actions, and among others those for personal injury, must be commenced within one year after the cause of action accrues. The defendant invokes section 2516 as the applicable section, and insists that the recovery now sought against the Railway Company for violation of the Safety Appliance Act is upon a new cause of action which was first alleged by the amendment of July, 1905, and that an action for this cause was then barred by this statute. In this connection the defendant relies upon the case of Union Pacific Railway Company v. Wyler, already cited, to the effect that, in such case, it is the date of such amendment, and not the date of commencing the suit which controls the bar of the statute. We do not find it necessary to decide whether the amendment of 1905 did introduce a new cause of action, or whether this case, by reason of the form of the original petition or the rules of pleading obtaining in Kentucky, should be distinguished from the Wyler Case, as somewhat similar questions have been by this court (So. Ry. Co. v. Simpson, 131 Fed. 705, 711, 65 C. C. A. 563; Brown v. Erie R. R., 176 Fed. 544, 546, 100 C. C. A. 132) and by the Circuit Court of Appeals of the First Circuit (Viscount, etc., v. So. Pac. Co., 176 Fed. 843, 100 C. C. A. 313). We prefer to assume for the purposes of this opinion that between the original and the amended petitions there was a "departure in law," and so that the date of the amended petition would be the end of the period to be considered. From this conclusion that the amended petition states a new cause of action because it states one depending on the statute we think it follows that the five-year statute (section 2515) covers the case, and hence that the action is not barred. This liability seems plainly to be one "created by statute." The act in question does not merely make a rule of evidence for a negligence case, but, even in the absence of any negligence, it causes or creates a liability which automatically and necessarily comes into existence by virtue of the statute when the statutory conditions

exist (Delk v. R. R., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590), and where, except for the statute, there would be no such liability. If the Kentucky courts had construed the one-year statute as covering such an action as this, we would be bound by such construction, but, in the absence of such controlling authority, we cannot adopt that view. The Kentucky cases which are cited (Carden, Adm'r, v. L. & N. R. R., 101 Ky. 113, 39 S. W. 1027; L. & N. R. R. v. Simrall's Adm'r, 127 Ky. 55, 104 S. W. 1011) do hold that actions for negligently causing death, which actions are created by the Death Act of 1854 (Acts 1853–54, c. 964), are barred in one year, but this is because the one-year limitation is found expressly stated in the original Death Act, and its presence in section 2516 is thought to be in this connection merely a transfer in revision.

We cannot construe sections 2515 and 2516 as covering in this respect a common field, and enforce the stricter or shorter limitation. Construed together, these sections mean that ordinary actions for personal injury are barred in one year, but that those actions of that general character which are created by statute are not barred until five years. The specific must control the general.

It is further to be noted that, when the defendant came to plead the statute of limitations, it raised that objection against "the cause of action relied upon by the plaintiff in the amendment filed on December 3, 1907," and insisted that the year had elapsed "before the filing of such amendment." It did not allege the existence of the bar at the time of the filing of the amendment of 1905, although this amendment clearly stated the cause of action based upon the Safety Appliance Act.

[4] Coming to the subject of defendant's liability, and treating the action as one where the Safety Appliance Act was to be applied in determining that question, we think the evidence required submission to the jury. The car in question was provided with couplers having levers extending to the outside, and Nichols, who was endeavoring to cut off one car from another, should have been able to do so without going between the cars. He testified that he pulled the lever without effect, and that he continued to do so repeatedly while the car was slowly moving one hundred feet. We do not overlook the fact that coupling apparatus in perfect order may refuse to respond to a pull upon the lever, because of a draw-bar pull, or because of the effect of a curved track. Here, however, there is no proof that the track was curved, and it appears that the car to be cut off was being pushed. Under these circumstances, in view of the extreme strictness of the rule eliminating all questions of due care and requiring at all events that the apparatus shall be in working order (Delk v. Railroad Co., supra; U. S. v. Ill. Cent. R. R. [C. C. A. 6] 177 Fed. 801, 804, 101 C. C. A. 15), repeated and unsuccessful efforts to make the lever operate are some evidence that it was not in the condition required by the statute (L. & N. R. R. v. Wilson [C. C. A. 6] 188 Fed. 417, 419, 110 C. C. A. 217; Hunter v. Ill. Cent. R. R. [C. C. A. 6] 188 Fed. 645, 651, 110 C. C. A. 459). As against this, three witnesses for defendant testified that they inspected the

couplings within an hour after the injury and that they did work. One of the three modified his statement by saying that one of the couplers worked "a little stiff." At the time of the inspection the cars were not coupled together, and the inspectors did not couple them or uncouple them, but only worked the levers. The identity of the cars inspected with those which Nichols uncoupled, and the fact that the coupling devices were not remedied in the interval depended on the testimony of one witness. He was not, it is true, contradicted in terms, but the jury was not obliged to give his story complete acceptance. In this state of the proofs a verdict could not be directed for the defendant on the ground that plaintiff's theory of negligence was conclusively disproved (B. & O. R. R. v. O'Neill [C. C. A. 6] 186 Fed. 13, 15, 108 C. C. A. 115).

We pass by the matter of assumption of risk as being excluded by the statute, and come to that of contributory negligence. Plaintiff testified that, when he found the lever would not work, he climbed up between the cars and stood upon the sill of the last car which was to remain in the train, and between the body of that car and the car which was being pushed and which was to be cut off. He says this was not only the customary method under the circumstances, but that he had been expressly instructed to take this course when levers would not work. Standing here and grasping the handhold upon the adjacent body of the car we cannot say that, as matter of law, he was in an unnecessarily dangerous position. It was in many respects safer than being upon the ground between moving cars, and we decline to say that assuming this position, after the failure of the automatic coupler apparatus, was necessarily negligence. He says that then, standing in this position and retaining with his left hand his grip upon the handhold, he put his right foot upon the sill of the other car, leaned down, pulled the pin, stepped back and recovered his upright position—all before the sudden jar which threw him to the ground. The conclusion that there was contributory negligence seems to be rested essentially upon Nichols' act in placing his right foot upon the sill of the other car. It obviously would be inexcusably negligent for a man to ride in this position, depending equally upon the foot upon each side, and then to cause the cars to separate, but the same conclusion cannot be imperatively applied to this case without overlooking his statement that he had recovered his upright position upon the following car before the shock, and that he had continually retained his grip upon the handhold. Whether his conduct under these conditions, and in view of his testimony that he was following instructions in this method of operation, made him guilty of contributory negligence, was for the triers of fact.

It is also urged that, after the lever refused to work, there was a safe way, and a dangerous way, of pulling the pin; that Nichols chose the dangerous way, and was, therefore, negligent. It is true that it would have been possible for him to climb over the train and operate the lever on the other side, or to refuse to go between the cars until the train had stopped; but we cannot say as matter of law

that it was his unquestionable duty to do either one of these things (N. & W. Ry.Co. v. Hazelrigg [C. C. A. 6] 184 Fed. 828, 831, 107 C. C. A. 66).

It results that the judgment below should be reversed, and the case remanded for a new trial.