PHILADELPHIA & R. RY. CO. v. McKIBBIN.

(Circuit Court of Appeals, Third Circuit.   June 24, 1919.)

No. 2470.

1. APPEAL AND ERROR ⊜⟞1005(3)—REVIEW—QUESTION OF FACT.

A verdict on conflicting evidence approved by the trial court is conclusive on Court of Appeals.

2. MASTER AND SERVANT ⊜⟞278(6)—INJURIES TO SERVANT—SAFETY APPLIANCE ACT—EFFICIENCY OF COUPLERS—EVIDENCE.

In an action under federal Employers' Liability Act 1908, as amended (Comp. St. §§ 8657–8665), for injuries from failure to provide a workable coupler as required by Safety Appliance Act of March 2, 1893, as amended by Act April 1, 1896, and Act March 2, 1903 (Comp. St. §§ 8605–8615), evidence of repeated and unsuccessful efforts by an experienced railroad man to operate the lever of an automatic coupler, when there are no circumstances consistent with its being in repair and workable condition to explain the inability to successfully operate it, is sufficient, without other evidence of its defective condition, to permit the inference that the coupler was defective.

3. TRIAL ⊜⟞194(19)—INJURIES TO SERVANT—INSTRUCTIONS—THEORY OF CASE.

It is proper to refuse a requested instruction in servant's personal injury action when the granting of the request would have required the jury to disregard plaintiff's testimony, and to accept defendant's testimony as to how and when the accident happened.

4. DAMAGES ⊜⟞96—EXCESSIVENESS—DISCRETION OF COURT.

That the judge in a personal injury action has on a previous trial reduced a verdict for plaintiff, but has failed to make a like reduction on a second trial does not evidence a clear abuse of discretion on refusing to reduce damages or to grant a new trial, where nearly two years' interest has accrued since the first trial, economic conditions had changed, and the difference between the amount awarded and that considered proper on the first trial was small.

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Action by Robert J. McKibbin against the Philadelphia & Reading Railway Company.   Judgment for plaintiff, and defendant brings error.  Affirmed.

Frank S. Katzenbach, Jr., of Trenton, N. J., for plaintiff in error.
Joseph A. Shay, of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge.   The defendant in error recovered a judgment in the court below against the plaintiff in error for damages resulting from personal injuries which he received while in the employ of the latter, as a brakeman, in its yards at Port Reading, N. J.   The action was brought under the federal Employers' Liability Act of 1908 and Supplements (Act April 22, 1908, c. 149, 35 Stat. L. 65; Act April 5, 1910, c. 143, 36 Stat. L. 291 [Comp. Stat. 1916, §§ 8657–8665]), and was based upon the alleged negligence of the defendant (the plaintiff in error), in failing to provide a car, which the plaintiff claims he was required to uncouple in the performance of his duty as a

⊜⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

brakeman, with a workable coupler, as required by the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531, as amended by the Act of April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 (Comp. St. §§ 8605–8615), and the negligence of certain of defendant's employés in failing to stop the train, from which the plaintiff claims he was required to uncouple two cars, when signaled to do so. It is conceded that, at the time the plaintiff was injured, he was employed in interstate commerce by the defendant, a common carrier by railroad, engaged in such commerce. Hence the federal Employers' Liability Act and the Safety Appliance Acts are applicable to the case. If therefore his injuries were the result of negligence on the part of his fellow servants, he may recover therefor. If, on the other hand, they were due to a defective coupler on one of the cars which he was required to uncouple, the fact that the same was defective, although the defendant may have exercised all the care to have had the same in proper condition, was such negligence as, under the Employers' Liability Act, by reason of the Safety Appliance Acts, entitled him to recover for the injuries which he sustained thereby. San Antonio Ry. v. Wagner, 241 U. S. 476, 484, 36 Sup. Ct. 626, 60 L. Ed. 1110; Texas & Pacific Ry. v. Rigsby, 241 U. S. 33, 43, 36 Sup. Ct. 482, 60 L. Ed. 874.

We now proceed to an examination of the assignments of error relied upon, in the light of these general observations. The defendant advances four reasons why the judgment below should be reversed. These will appear as they are hereafter discussed.

1. It is first urged that the plaintiff's version as to how the accident happened (which must have been accepted by the jury, in order to entitle the plaintiff to recover), "is contradicted by physical facts," and that the judgment should for that reason be reversed. At the outset of the discussion of this point, it should be noted that the trial court declined to set aside the verdict as contrary to the weight of evidence. In reality, therefore, the defendant is seeking to have the action of the trial judge in that respect reviewed. Without wishing to be understood as conceding or intimating that a federal court of appeal may, on writ of error, reverse a judgment because it is based upon a verdict contrary to the "physical facts" in the case, except it be possibly, on the theory that the refusal of a trial judge to set aside such a verdict amounts to a clear abuse of the discretion which the law vests in him (James v. Evans, 149 Fed. 136, 141, 80 C. C. A. 240 [C. C. A. 3d Cir.]), it is, we think, sufficient for the purposes of this case merely to state that a careful reading of the record discloses that the so-called "physical facts," which the defendant claims conclusively controvert the plaintiff's version of the accident, were themselves controverted and depended for their establishment upon the acceptance by the jury of the testimony of some of the defendant's witnesses who testified to them, and the rejection of the plaintiff's testimony, either in respect to their existence or in explanation of the apparent inconsistency between some of them and the plaintiff's version of how the accident happened.

[1] It is therefore apparent that we are asked to weigh the conflicting evidence in the light of the probabilities, and thus to invade the

exclusive province of the jury, and, on an application for a new trial, of the trial judge. This we may not do. Erie Railroad Co. v. Schmidt, 225 Fed. 513, 515, 140 C. C. A. 655 (C. C. A. 3d Cir.); Humes v. U. S., 170 U. S. 210, 18 Sup. Ct. 602, 42 L. Ed. 1011; Herencia v. Guzman, 219 U. S. 44, 31 Sup. Ct. 135, 55 L. Ed. 81; Texas & Pacific R. R. Co. v. Harvey, 228 U. S. 319, 325, 33 Sup. Ct. 518, 57 L. Ed. 852. It is not urged or suggested that there was a clear abuse of discretion on the part of the trial judge in declining to grant a new trial on the ground that the verdict was contrary to the weight of the evidence; but if such had been the defendant's insistment, or if the effect of its present contention amounts to the same thing, which we think it does, we would be unable to find any such abuse of discretion on his part, in view of the conflict in the evidence, involving, as it does, the credibility of witnesses, without disregarding the rule before referred to, that on writ of error we are precluded from considering the weight of the evidence, if there was any evidence to go to the jury in support of the verdict.

2. It is next urged that there was not sufficient proof of a defective coupler on the car which plaintiff claims caused his injury to warrant the submission of the defendant's negligence to the jury on the theory that it had violated the Safety Appliance Acts. It is true that the only evidence on that point was that given by the plaintiff himself to the effect that he tried three times to operate the lever which is designed to open the coupler and thereby uncouple the cars, and that it would not work. In connection with that evidence, however, it must be borne in mind that the plaintiff was an experienced railroad man, who had been working as a brakeman for about six years previous to the accident and was accustomed to operate couplers such as was installed on the car in question; that the car was being pushed; that, so far as the evidence discloses, it was not on a curved track; and that there was no evidence which would explain the apparent defective condition of the coupler, which it would be otherwise permissible to infer from the fact that it did not work. It is true that several witnesses for the defendant testified that the lever on a car which they tested immediately after the accident, and which car they claim caused plaintiff's injury, did work properly, but they referred to a different car than that which the plaintiff referred to. Their version as to how and where the accident happened was radically different from the plaintiff's version. If the jury believed the plaintiff's testimony as to how and where he was injured (as the verdict establishes that they did), then they were justified in disregarding all of the testimony of the defendant's witnesses which related to the coupler on the car in respect to which they testified. There was also evidence that the coupler on the car referred to by the plaintiff had been tested, as had all other cars in the yard, some time prior to the accident by a car inspector; but as to exactly when such inspection took place, the extent of it, etc., the evidence was uncertain.

[2] The case then presents the question whether the repeated and unsuccessful efforts, by an experienced person, to operate the lever of an automatic coupler, when there are no circumstances consistent

with its being in repair and workable condition to explain the inability to successfully operate it at a given time when, under the statute, it should be in working order, without other evidence of its defective condition, is sufficient to permit the inference that the coupler was not not in the condition required by the statute when the efforts to operate it were made. This question has received an affirmative answer by the Circuit Court of Appeals of the Sixth Circuit in Nichols v. Chesapeake & Ohio Ry. Co., 195 Fed. 913, 917, 115 C. C. A. 601. With the conclusion thus reached we are in accord. We do not wish to be understood, however, as holding what seems to have been conceded in Chicago, R. I. & Pac. Ry. Co. v. Brown, 229 U. S. 317, 320, 33 Sup. Ct. 840, 57 L. Ed. 1204; and what the Court in San Antonio Ry. v. Wagner, 241 U. S. 476, 484, 36 Sup. Ct. 626, 629 (60 L. Ed. 1110), expressly found it unnecessary to determine, "that the failure of a coupler to work at any time sustains a charge that the [Safety Appliance] act has been violated"; nor do we wish to be understood as intimating any opinion upon that question. We merely decide that the failure of the coupler to work under the circumstances above detailed is some evidence, the weight of which is for the jury under all the circumstances of a given case, that the coupler was not in the condition required by the act, when the plaintiff was injured.

[3] 3. The next error assigned is the refusal of the trial judge to charge one of the defendant's requests. We think that he was entirely right in declining to do so, either in substance or as actually phrased. The evidence does not disclose that there was such a coincidence between the time when the engineer was notified that the sand pipe of his engine was dragging, and the time when, according to the plaintiff's testimony, the brakeman on the train signalled the engineer to stop the engine, as would relieve the latter's failure to observe the signal of the imputation of negligence. Moreover, if the jury believed the plaintiff's evidence, the engine did not come to a stop until long after the stop signal had been given. The granting of the request would therefore have required the jury to disregard the plaintiff's testimony as to when the signal to stop was given by the brakeman and to have accepted defendant's testimony, that the signal to stop was not given until after the accident, and that, in turn, would have required the jury to cast aside the plaintiff's whole version of how and where the accident happened.

[4] 4. The last assignment of error is based upon the refusal of the trial judge to grant a new trial or reduce the amount of the verdict upon the ground that it was excessive. The contention in this respect is predicated upon the proposition that the refusal amounted to an abuse of discretion, and proceeds on the theory that as the amount of damages awarded by the jury was in excess of the amount to which the trial judge had reduced a verdict rendered on a previous trial, his failure to make a like reduction in the verdict rendered on the second trial, evidences a clear abuse of discretion. We are unable to assent to this view. The fact that nearly two years' interest had accrued on the amount which the trial judge considered on the first trial was not excessive, and the change in economic conditions between the time of

the second trial and the first trial fully justified him in declining to reduce the verdict to the amount which he felt was proper at the time of the first trial. Moreover, and quite irrespective of those facts, he was fully justified in declining to reduce the amount of the verdict on the second trial when the difference between it and the amount which he had considered proper on the first trial was comparatively small.

Finding no error in the record, the judgment below is affirmed, with costs.