## PAYNE, Director General of Railroads, v. COLVIN.

(Circuit Court of Appeals, Seventh Circuit. June 24, 1921.)

No. 2886.

1. **Appeal and error** ⟐⟐927(7)—**Favorable view of plaintiff's evidence taken on review of motion for directed verdict.**

   In reviewing the court's refusal of defendant's motion for directed verdict, the court on appeal will take the version of the evidence favorable to the plaintiff.

2. **Master and servant** ⟐⟐112(1½)—**Coupler required by federal Safety Appliance Act.**

   Federal Safety Appliance Act, § 2 (Comp. St. § 8606), requiring automatic couplers, is not to be construed as permitting the use of a coupler which might require brakeman to go on the tracks at the end of the car, though the approaching train was some distance away, in order to open the knuckles of the coupler, but requires a coupler that will open or may be opened without going between the cars.

3. **Constitutional law** ⟐⟐70(3)—**Master and servant** ⟐⟐270(10)—**Evidence of impracticability of complying with federal Safety Appliance Act irrelevant.**

   In an action for negligence in not maintaining automatic couplers required by Federal Safety Appliance Act, § 2 (Comp. St. § 8606), evidence to the effect that it is impracticable to build couplers which can always be opened by the lever at the side of the car, that no such couplers have been made, and that defendant used a generally approved type, is irrelevant, for if the statute is harsh, relief must come from the lawmaking, not the judicial, branch of the government.

4. **Appeal and error** ⟐⟐1064(1)—**Error in instruction on defendant's capacity to earn livelihood for himself and family held harmless.**

   Where, in suit for personal injuries, plaintiff testified without objection as to his age, and that he was married and had three children, statement in the charge, permitting the jury to take into account the effect which the injury had on his capacity to earn a livelihood "for himself and his family," was immaterial and harmless.

5. **New trial** ⟐⟐102(1)—**Newly discovered rule in railroad's books held not ground.**

   A railroad company was not entitled to a new trial as for newly discovered evidence, consisting of a printed rule in the company's books, promulgated long before the accident.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action by Edward O. Colvin against John Barton Payne, as Director General of Railroads. Judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari denied 256 U. S. ——, 42 Sup. Ct. 92, 66 L. Ed. ——.

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. J. Killilea and C. H. Van Alstine, both of Milwaukee, Wis., for plaintiff in error.

Arthur W. Richter and Frank E. Waldron, both of Milwaukee, Wis., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Colvin, plaintiff in the trial court, recovered judgment for personal injuries sustained while performing interstate service for an interstate railroad company.

His action was based on the federal Employers' Liability Act (Comp. St. §§ 8657–8665), and he pleaded that his injury was caused by the company's failure to maintain automatic couplers as required by the federal Safety Appliance Act (Comp. St. §§ 8605–8612) and also by the engineer's failure to obey his stop signal.

Colvin was a brakeman; the engine, with several cars attached, was backing toward a standing baggage car; Colvin was on the car that was to be coupled to the standing baggage car; the engine was moving quite slowly; when the cars were 40 or 50 feet apart Colvin noticed that the knuckles on both cars were closed; he ran to the standing baggage car and pulled the lever at the side of the car three or four times, but without any effect in opening the closed knuckle; the other car was then 15 or 20 feet away; at that instant Colvin gave the engineer a signal to stop ("I could see the engineer's cab and there was no reason why he could not see my signal"); upon giving the signal Colvin stepped between the rails to open the knuckle on the standing baggage car; the stop signal was not obeyed; when the cars were about 3 feet apart Colvin in backing out slipped on the icy ground; in trying to save himself he seized hold of a grabiron, but his right foot flew up and was caught between the couplers as they came together.

[1] At the close of the evidence defendant moved for a directed verdict and excepted to the overruling thereof. We have read the bill of exceptions and from it we have hereinabove taken the version that is favorable to Colvin, which we must assume was adopted by the jurors. That version conflicts with testimony of other witnesses and with Colvin's own statement given shortly after the occurrence. Weight and credibility are not reviewable. On the assignment of error now under consideration the only question is whether Colvin's proofs as above stated sustained his pleaded cause of action.

[2] Couplers must be such that the act of coupling, as well as of uncoupling, can be accomplished "without the necessity of men going between the ends of the cars." Johnson v. So. Pac. Ry. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363. Emphasizing the words "between the ends of the cars," defendant contends that the true construction of the statute [1] is that, if cars to be coupled are standing a considerable dis-

---

[1] "It shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars." 27 Stat. 531 (Comp. St. § 8606).

tance apart with knuckles closed, the command of Congress is satisfied, although there is no appliance extending outside of the rails by means of which the knuckle can be opened, and although the brakeman is thereby compelled to go between the rails on the intervening track and open the respective knuckles by hand, provided that the couplers, with knuckles so opened and remaining open, will couple automatically by impact. But opening the knuckles is a necessary part of the act of coupling as a whole; and remaining open against their being closed by the jar of movement is a necessary condition. Looking to the safety of employees as the object of the statute, defendant insists that there is no danger to a brakeman in going on the track to open the knuckles of cars standing apart. Similarly there is no danger in going on the track to perform by hand the act of uncoupling, if there could be an assurance that there would never be any movement of cars until the brakeman was safely out of the zone of danger. If a brakeman has opened the knuckles by hand and has retired to safety before movement begins, there would be the hazard, if car movement should jar into nonoperative position the uncontrolled and uncontrollable knuckles which defendant contends for, that the brakeman would yield to the temptation to exercise his oldtime and now forbidden skill in jumping into and out of danger by attempting to readjust the knuckles while the cars were in motion. We therefore reject defendant's interpretation of the statute, and we conclude that plaintiff's proofs warranted the jury in finding that the statute was violated, that the engineer was negligent in failing to abate the peril which originated in such violation, and that such violation and such negligence were respectively the proximate and contributing causes of the injury.

[3] Defendant complains of the court's rejection of proffered evidence to the effect that it is impracticable to build couplers whose knuckles can always be opened by the lever extending beyond the rails to the side of the car, that no such couplers have yet been made, and that defendant uses a generally approved type. Under the construction we place upon the statute, the evidence was irrelevant. If the statute is harsh and is difficult to comply with, relief must come from the lawmaking, not the judicial, branch of the government. It is to be observed that the offer did not profess to show that compliance is a mechanical impossibility. If lawmakers should command what is absolutely impossible of execution, as conditioning one's freedom from punishment on jumping over the courthouse, a different question would be presented.

[4] Exception was taken to only one part of the charge to the jury:

"Take into account the effect which this injury has had upon his capacity to earn a livelihood for himself and his family."

Without objection or exception plaintiff testified in response to questions introducing him to the jury that he was 30 years old, married, and had three children. It was proper for the jury to consider whatever the evidence disclosed as to plaintiff's diminished earning power. What he might do with his earnings (in support of himself alone or in support of his family) was immaterial. But the reference in the

charge to this immaterial matter which defendant acquiesced in bringing into the case was harmless.

[5] Defendant applied for a new trial on account of new matter discovered after the trial. This alleged new matter was a printed rule in the company's book of rules promulgated long before the accident. Defendant's claim that the matter was new and was discovered only after the trial was properly ignored.

The judgment is affirmed.