MATILDA SLOMKA, Respondent, *v.* NASSAU ELECTRIC RAILROAD COMPANY, Appellant.

Second Department, May 7, 1920.

Carriers — negligence — action by passenger to recover for injuries received by collapse of seat — evidence — trial — failure of plaintiff to move for direction of verdict — prejudice not shown — when lack of due care not shown — rule of res ipsa loquitur does not relieve plaintiff of burden of showing negligence — question for jury — setting aside verdict erroneous.

In an action for negligence to recover for injuries received by the plaintiff which were caused by the collapse of an adjustable seat in one of defendant's street cars, evidence examined, and *held*, not to support the plaintiff's allegations that the seat was out of order and in a defective and worn condition and that the supports thereunder had not been properly placed by the defendant where they belonged.

The plaintiff by failing to move for a direction of a verdict conceded that the evidence presented a question of fact for the jury.

There is no possible indication that the verdict was the result of prejudice outside of the fact that it was for the defendant.

The defendant was not bound to provide against the contingency that the plaintiff in using the seat would so locate her body that when she got

out of the seat she would lift it from the sockets and thereby create a condition which would cause the seat to collapse.

The rule of *res ipsa loquitur* invoked by the plaintiff aids, but it does not inevitably accomplish, and despite the happening of the accident there still remained the burden on the plaintiff to establish negligence, and the question for the jury was whether the plaintiff with the aid of that rule had inculpated the defendant for the lack of due care under the circumstances.

On all the evidence, *held*, that it was error for the trial court to set aside the verdict for the defendant and the verdict should be reinstated.

APPEAL by the defendant, Nassau Electric Railroad Company, from an order of the Supreme Court, made at the Kings County Trial Term and entered in the office of the clerk of the county of Kings on the 19th day of June, 1919, setting aside the verdict in favor of the defendant.

*Harold L. Warner* [*George D. Yeomans* with him on the brief], for the appellant.

*Henry M. Dater* [*Edward J. Fanning, Jay I. Jones* and *L. Victor Fleckles* with him on the brief], for the respondent.

JENKS, P. J.:

I think that the defendant should hold the verdict. The action is for negligence. The plaintiff testifies that after she had sat as a passenger in an adjustable seat of the defendant's car for 5 or 7 minutes, the seat collapsed. She testifies that she sat with her feet under that seat, so that it came down upon the calves of her legs. The negligence assigned is that this seat was " out of order and in a defective and worn condition; that the supports thereunder had not been properly placed where they belonged, by the defendant." There was no testimony to support these allegations.

The defendant called the woman who had been the conductor of this car. Her testimony is as follows: The casualty happened on her third trip in that car. There had been no trouble with the seat theretofore. The seat had a support with a peg at its end for insertion in a socket in the floor of the car, and she had thus adjusted the seat. Thereafter and up to the time the seat fell others had sat in the seat in security; when she had adjusted the seat she saw nothing defective in it, and after the collapse she examined the seat and found neither defect

nor flaw in it.   She thereupon set it up again so that it was used subsequently with safety by other passengers.   Upon cross-examination this witness said that the seat must have "loosened up some way or other," and that the plaintiff was very stout and got up two or three times to ask questions. "Q. Could a person sit on this seat, weighing a hundred and fifty pounds, and kick them out with her feet?   A. Naturally, she would be able to lift it up with her weight if she had the calf of her leg under it."   Although the plaintiff was recalled, she did not contradict this statement that she "got up two or three times."

The plaintiff relied wholly upon the rule of evidence known as *res ipsa loquitur.*

There was no evidence that the seat was "in a defective and worn condition."   And there was direct evidence to the contrary.   The seat was "out of order" only after it collapsed. There was no evidence that the cause of the collapse was any defect or flaw or impairment of construction.   Although the jury could have inferred that the collapse was attributable to the fact that the support at that time was not in its place, yet there was no evidence that the supports thereunder "had not been properly placed where they belonged, *by the defendant.*" The jury were not bound to infer that because the seat collapsed the supports had not been properly placed *by the defendant,* in face of the testimony of the conductor that she had adjusted it properly and of her testimony elicited on cross-examination, that the plaintiff "got up two or three times," and that such a person in such a position would be able to lift up the seat with the calf of her leg and thus lift a support or the supports out of their sockets.   If the jury with belief of the circumstances adopted this explanation, such explanation did not rest upon either the negation of a physical fact or the existence of a physical impossibility.   (See *Fox* v. *Le Comte,* 2 App. Div. 63; affd., on opinion below, 153 N. Y. 680.)   If this explanation involved an impossibility, the plaintiff was bound to show it (Id.), but there was no evidence contradictory or contrary to this theory.

The plaintiff failed to move for a direction of a verdict and thus conceded that the evidence presented a question of fact for the jury.   (*Grogan* v. *Brooklyn Heights R. R. Co.,* 107 App.

Div. 254.)   The learned and able court did not hand down an opinion, but, with characteristic care, expressed orally its reason for disturbance of the verdict.   The court thought that there was prejudice in that the jury believed that the doctor and the plaintiff were exaggerating the injuries.   There is no possible indication of prejudice outside of the fact that the verdict was for the defendant.   Indeed, the court went on to declare that a verdict which found that the conductor had exercised reasonable care " would be against the weight of the evidence, because it happened from one of three things; it was never a proper appliance, or it was not set properly, or it was moved out by somebody."   Of these " three things," as to the first there was no testimony that the seat was never a proper appliance, so that the reliance of the plaintiff upon the first thing rested solely upon the rule of *res ipsa loquitur;* as to the second there was no testimony that the seat was not set properly, save that it collapsed, so that the reliance of the plaintiff is upon the mere fact of collapse — again invocation of the said rule; and as to the third there was no testimony to indicate that the defendant knew or legally should have known that the seat had been moved out by " somebody," so that it was unsafe for occupation by the plaintiff; there was no testimony that the defendant had moved it out, but testimony to the contrary by the defendant, that it had been properly adjusted and had been theretofore used without peril.

The case rested upon the collapse of the seat.   Assume that the jury followed this third hypothesis stated by the learned court.   Such course of the jury was not in disregard of any testimony that the appliance was not proper or was not set properly, while the jury had before it testimony that the seat had been used in security on the first and second and third trips of this very car.   Adopting, then, this third hypothesis, namely, that " somebody " moved the seat so that it fell, was the jury bound to hold the defendant negligent? Was it not justified in adopting the theory, elicited by the plaintiff, that she herself, a stout woman with the calves of her legs under the seat, disturbed it from its sockets by lifting it by her person as she got up therefrom several times?   If so, was the defendant, in the exercise of due care, bound to provide against this result of such location by the passenger

of her body and of such subsequent acts whereby she lifted the seat from its sockets?    I think not.

The conductor was not in the employ of the defendant when she testified; even if she had been, her credibility was for the jury.    (*Connolly* v. *Central Vermont R. R. Co.*, 4 App. Div. 221; affd., 158 N. Y. 675.)    There was no *testimony* against her testimony, for the case of the plaintiff rested upon the presumption afforded by this rule of evidence called *res ipsa loquitur.* There was nothing incredible in the conductor's testimony.

Despite the happening of the casualty, there still remained the burden upon the plaintiff to establish negligence, otherwise the defendant was an insurer, and it was not.    The rule of *res ipsa loquitur* aids, but in itself does not inevitably accomplish.    And the question for the jury was whether the plaintiff, with the advantage of the rule, had inculpated the defendant for the lack of due care under the circumstances.    (*McPadden* v. *New York Central R. R. Co.*, 44 N. Y. 478; *Carroll* v. *Staten Island R. R. Co.*, 58 id. 126; 6 Thomp. Neg. 614.)    Even if, as the learned and able court conceded, the collapse of the seat might be attributed to the fact that " somebody " moved the seat, the jury might have concluded either that the plaintiff herself, by her own acts, had moved it, as suggested by the testimony of the conductor, or that some other person had moved it for whose act the defendant was not liable, or that in any event its displacement was not caused by the lack of due care on the part of the defendant.    In *Mieuli* v. *New York & Queens County Railway Co.* (136 App. Div. 373) and in *Grogan* v. *Brooklyn Heights R. R. Co.* (107 id. 254) this court has declared beyond the necessity of repetition the rules which regulate the disturbance of a defendant's verdict.

It must be remembered also that the question before the court did not involve any clash of witnesses called by the opposite parties.

I think the order must be reversed, with costs, and the verdict reinstated, with costs.

Present — JENKS, P. J., MILLS, RICH, BLACKMAR and JAYCOX, JJ.

Order reversed, with costs, and verdict unanimously reinstated, with costs.